WILLIAM I. THORN, Respondent, v. OLIVER T. BEARD, Appellant.

*Court of Appeals, October 18, 1892.*

1. *Attorney. Compensation.*—An attorney, while acting as a guardian *ad litem*, cannot recover for services rendered by him as counsel for a party whose interest is adverse to that of the infants.
2. *Same.*—Nor can he recover where he neither did the services he was employed to do, nor made any special preparation for its performance.

Appeal from judgment of the supreme court, general term, second department, affirming judgment in favor of plaintiff, entered upon verdict of a jury, at circuit.

*O. T. Beard*, in person, for appellant.

*Wood & Morschauser*, for respondent.

FINCH, J.—This action was brought by an attorney, to recover for services rendered to his client. They covered a period extending from September, 1887, to March or April

of 1889. During that time a suit was brought for the construction of the will of William Beard, in which the interest of the defendant was quite seriously involved, and a proceeding was instituted for the settlement of the accounts of the executors named in that will. In each of those litigations the defendant was represented by counsel other than Thorn, and the latter participated in the character of guardian *ad litem* for certain of the infant children of the defendant, whose interests under the will were certainly adverse to those of their father. He was seeking to divert income to himself which otherwise would accumulate for the benefit of the children as remaindermen. During the progress of these litigations there was much of consultation and conversation between the two parties about the will and its construction and the action and accounts of the executors. Upon the entry of final judgment in the equity suit, an allowance was made to Thorn, as guardian, of five hundred dollars. He took the money, but was discontented with its amount, and presented a bill for seven thousand dollars against the defendant, for five thousand dollars of which he had presented a sworn claim to the court as due to him in the capacity of guardian. The defendant refusing to pay, this action was brought. The courts have held that Thorn's position as guardian for the infants was inconsistent with any action as counsel for the defendant in the then existing litigations, and refused to permit a recovery for the services claimed to have been rendered; and that determination was so clearly correct as scarcely to require discussion.

But beyond what was involved in the equity suit and the accounting before the surrogate, there seemed to have been two questions raised by the defendant which were important to him, and as to which the interest of his children was identical with his own. These were whether the executors under the will were entitled to commissions not only as such, but also as trustees under the trust provisions of that instrument; and whether a bill of sale for a dredge plant executed for a

41

THORN v. BEARD.

nominal consideration by the testator to one of his sons could be set aside. A successful result of these inquiries would have necessarily added large sums to the estate and benefited alike the defendant and his children. Thorn claimed to have rendered services in those directions upon the request of the defendant, and has recovered a judgment therefore which is assailed on this appeal, but I am unable to see how it can be sustained.

The two subjects came up while the litigations over the will were in progress. Thorn testifies that he told defendant that neither question was involved in or could be determined by the suit for construction of the will or the accounting of the personal estate which were in progress; that defendant's remedy would be by an action thereafter to be commenced to remove the executor who held the bill of sale and restore the subject matter of it to the estate; but that he, Thorn, would not enter upon that litigation unless he could entirely control it.

I quote his testimony: "I said we will go through this matter, but when we come to the suit for the accounting and for the discharging of the trustees I am going to do the business in my own name and in my own way, or I won't do it; you have put me to a great deal of trouble here, you are tenacious, I will run your litigation or you will run it; well, he says, I engage you now to run that litigation, do you hear? 'Yes, in my name?' 'Yes.' Well, I have fished behind the net long enough and I cannot handle myself, and I intend to be where I can protect myself fully, and I want you to talk a great deal less, if you will, Colonel, and let me have my own way a good deal more or less; I want you to let me alone. Mr. N. B. Haight was present when that conversation occurred, and the thing was discussed thereafter, and it was understood that just as soon as we got the judgment perfected and matters straight in this construction suit, that that matter, then fully discussed, was to be started in action, Oliver T. Beard against the balance.

" Q. Were you, posted and prepared to commence that action and carry it through?   A. I think I was as we under-stand—I knew all about it, and I knew how to commence it except in details.

" Q. After the completion of that other suit, fixing as to income, that suit was not commenced ?   A. We split."

He testified again that when the subject of the bill of sale to defendant's brother came up in a discussion over the ac-counting he told the defendant " to let it alone and it would all come up in the big suit."   It seems to me to be the just result of the testimony that while Thorn was acting as guar-dian *ad litem* for the infants he was also more or less advis-ing defendant in directions hostile to their interests; that in the course of those discussions the double commissions which might or might not be charged and the bill of sale were talked about; that those matters were incidental and came up at first before the relation of attorney and client was established between Thorn and defendant; that it was not to be estab-lished until after the existing litigations were out of the way and Thorn left unhampered by his position as guardian *ad litem ;* that he refused to be employed in his existing situ-ation, and only on condition that he could act in his own name and in his own way; and that the only employment by defendant to which he anywhere testified was a retainer to bring an independent suit after the close of the existing litigations.   Now that suit he never brought.   He did not enter upon the stipulated employment.   He never even of-fered to bring it or tendered his services for that purpose.

On the contrary he presented an unjust bill, and then sued upon it, making impossible the future relation contemplated. In other words, he neither performed nor offered to perform the contract of employment to which he testified, but put himself in an attitude toward the defendant which would have justified the latter in refusing his services if he had tendered them.   And beyond that I can discover no evidence that Thorn did any labor or performed any work after the

contract of employment and by reason of that engagement in the way of preparation for the future suit contemplated. What he says about the double commissions is this: "Whether they had a right to single or double commissions was the serious question that he made—I had none. Q. That question never as matter of fact arose at all? A. Never as yet, because he did not bring that suit." And he says, elsewhere, that he stopped the defendant's discussion of the subject, saying he knew all about it and was devoting time to it in another very important case. I cannot find that he ever advised the defendant one way or the other upon the question, but kept his knowledge and opinion to himself, evidently intending to wait until the question in some way arose, although apparently it did arise and was decided in the accounting before the surrogate and so came within the duties of the guardian. So far as the bill of sale is concerned he seems to have done nothing and had not investigated the details. It seems to me to be beyond dispute that he neither did the service he was employed to do or made any special preparation for its performance. The question was fairly raised on the trial by a motion for a nonsuit and by an exception to so much of the charge as related to the bill of sale of the dredge plant. We think the nonsuit should have been granted.

The judgment should be reversed and a new trial granted, costs to abide the event.

All concur.